IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MAGICAL FARMS, INC., et al. | ) | CASE NO. 1:03CV2054 |
| | ) | |
| | ) | JUDGE CHRISTOPHER A. BOYKO |
| Plaintiffs, | ) | |
| | ) | **PLAINTIFFS, MAGICAL FARMS, INC.** |
| vs. | ) | **ET AL.'S, MOTION TO PRECLUDE** |
| | ) | **THE TESTIMONY OF EXPERT** |
| LAND O'LAKES, INC., et al. | ) | **WITNESS STEPHEN BUFFO** |
| | ) | |
| Defendants. | ) | **ORAL HEARING REQUESTED** |

Pursuant to Rule 702 of the Federal Rules of Evidence, Plaintiffs, Magical Farms, Inc. ("Magical Farms") and Majestic Meadows Alpacas, Inc., ("Majestic Meadows") (together with Magical Farms, "Plaintiffs") move this Court for an order precluding Defendants Land O' Lakes, Inc.'s and Land O' Lakes Farmland Feed, LLC's (collectively, "Defendants") proposed expert witness, Stephen Buffo ("Buffo"), from testifying in this matter. Buffo's testimony is neither reliable nor relevant to Plaintiffs' damages in this case and will not assist the jury in assessing those damages. Buffo has no independent opinion of Plaintiffs' damages, and to the extent that Buffo attempted to "correct" the errors in Plaintiffs' expert, Mike Safley's ("Safley") "damages model," the purported corrections are not based on reliable facts or data.

Buffo lacks any substantive experience with alpacas, and admitted that he had no ability to appraise individual alpacas. All Buffo can offer is his different calculation of an average price for an alpaca (different from Safley's averages, which are for background information, not for setting values), utterly unrelated to the specific alpacas at issue in this case. This testimony is not worthy of admission in this case.

Therefore, and for the reasons set forth in the Memorandum of Law attached hereto and incorporated herein, Buffo should be excluded as a witness at the trial on this matter.

Respectfully submitted,

/s/Douglas V. Bartman
Douglas V. Bartman (0073103)
Robert J. Valerian (0001533)
Kahn Kleinman, LPA
1301 East Ninth Street
2600 Tower at Erieview
Cleveland, OH 44114-1824
(216) 696-3311 (Phone)
(216) 623-4912 (Fax)
dbartman@kahnkleinman.com
rjvalerian@kahnkleinman.com

*Attorneys for Plaintiffs, Magical Farms, Inc. and Majestic Meadows Alpacas, Inc.*

# MEMORANDUM IN SUPPORT OF MOTION TO PRECLUDE

## INTRODUCTION

Defendants should not be permitted to offer Buffo as a witness as to Plaintiffs Magical Farms' and Majestic Meadows' damages in this lawsuit because he is not (by his own admission) qualified to appraise the value of alpacas and because any criticism that he may have of Plaintiffs' experts is not based on reliable facts in this case. Buffo is not qualified to testify to the assertions set forth in his expert reports (Ex. 1, Buffo's Magical Report. and Ex. 2, Buffo's Majestic Report, collectively the "Reports" or "Buffo's Reports") which purport to "correct" alleged "errors" in Plaintiffs' expert, Michael Safley's ("Safley") appraisal reports. Buffo has no experience in the alpaca industry:

- He has not purchased or been personally been involved in the purchase of an alpaca (Buffo Deposition ("Buffo Depo."), ECF# 273, at p. 39);

- He has not acted as a consultant for a buyer or seller of an alpaca (*Id.*);

- He has not attended an alpaca auction (*Id.* at p. 40);

- He has not performed any work in the alpaca industry except for providing Defendants with reports arising from poisoned feed cases (*Id.* at pp. 41-42);

- He has no experience in consulting with alpaca farms as to operations (*Id.* at p. 42);

- Except for spending a half-day at the farm of Defendants other putative expert, Dr. Stachowski, he has not spent any time at an alpaca farm (*Id.* at pp. 42-44);

- He is not a member in any alpaca organization (*Id.* at p. 67);

- He has not read any book on alpacas (*Id.* at p. 68);

{AWF\K0638216.5}

- He has not attended any seminars related to alpacas (or livestock for that matter) (*Id.* at p. 69);

- He has not attended any courses, education, or training with respect to alpacas (*Id.* at p. 69);

- He did not visit Magical Farms or Majestic Meadows (*Id.* at p. 71);

- He did not interview other alpaca farmers, or any alpaca auctioneers (*Id.* at pp. 71-72);

- He has not "determined what the individual fair market value is for any of the animals at issue specifically in this case" (*Id.* at pp. 82-83).

Buffo's assertion that Safley employed "inappropriate and unreliable methodology" in preparing his reports is without merit, and even if Safley's method contained some flaw as Buffo asserts, the methodology Buffo used to make the "corrections" is unreliable at best. Safley is a property appraiser with expertise in determining the fair market value of alpacas based on his knowledge and expertise in the alpaca farming industry. Buffo, on the other hand, purports to be an expert in the areas of economics and business valuation, and admits that he cannot determine the fair market value of an individual alpaca. The ultimate conclusions of Buffo's Reports, however, are not derived from any theory of damages grounded in Buffo's purported areas of expertise.

Furthermore, to the extent that Buffo himself employs any "methodology" at all in making the "corrections," the method appears to be solely calculated to artificially reduce the appearance of Plaintiffs' extensive damages in this case. Buffo's "methodology" is nothing more that a simplistic calculation of average alpaca auction prices gleaned from limited and

unconfirmed sources. This Court should not allow such unreliable and irrelevant evidence to be admitted under the guise of expertise in this case.

## FACTS

Plaintiffs in this case set forth negligence, negligence *per se*, strict liability in tort and product liability claims against Defendants for injuries to Plaintiffs' alpacas resulting from poisonous feed manufactured and distributed by Defendants. (Complaint). Plaintiffs seek compensatory damages measured by the difference between the actual values of the Alpacas before and after they consumed the poisonous feed. (*Id*).

In support of their damages claim, Plaintiffs engaged Safley to provide an opinion of the loss in market value to their rather unique damaged property. (Safley Depo., ECF# 237, Ex. A, Magical Farms App.; Ex. B. Majestic Meadows App.) Safley is qualified to appraise Plaintiffs' alpacas by virtue of his more than twenty years of experience and training in the areas of alpaca husbandry, fleece, conformation, breeding and history, as well as his ownership of alpacas and operation of alpaca farms, participation in alpaca industry organizations and extensive authorship of alpaca-related publications. (Safley Depo., 104 -105).

The opinions in Safley's reports are primarily appraisals of each Plaintiffs' alpacas for the purpose of "establish[ing] the market value of the subject alpacas immediately prior to eating the Land O' Lakes feed and immediately after eating the Land O' Lakes feed." (Safley Depo., Ex. A, Magical Farms App., p. 4.1; Ex. B. Majestic Meadows App., p. 3.3 ).[1]

Apparently solely to rebut Safley's appraisals, Defendants engaged Buffo and Ernst & Young, LLP ("Ernst & Young"). (Buffo Depo., p. 9; Ex. 1, Magical Farms Rep., Ex. 2, Majestic

---

[1] Safley's report related to Majestic Meadows does provide an analysis of operating losses to Majestic Meadows in addition to the appraisal-derived damages estimate. That analysis is related to estimated operating losses for advertising expenses and a reduction in contract price for the sale of an alpaca as a result of the poisonous feed incident. (Safley Depo., Ex. B. Majestic Meadows App., p. 3.1 ).

Meadows Rep.). Buffo has been engaged by Defendants several times in other cases related to the poisonous alpaca feed. (Buffo Depo., pp. 7-10). Buffo is a principal in the accounting firm of Ernst & Young, (Buffo Depo., p. 25), and purports to be an expert in economic analysis, business valuation and damages consultation, among other things. (Buffo Depo., p. 25, Ex. 1, Buffo's Magical Rep., p. 31; Ex. 2, Buffo's Majestic Rep., p. 22). Buffo is neither a CPA nor a credentialed appraiser. (Buffo Depo., p. 25, pp. 17-18; Ex. 1, Magical Farms Rep., p. 31; Ex. 2, Majestic Meadows Rep., p.22).

Buffo's reports are limited in scope, and by their own language purport only "to comment on [Plaintiffs'] damages, if any," and to "review and comment on" Safley's Reports. (Buffo Depo., Ex.1, Magical Farms Rep., p. 3; Ex. 2, Majestic Meadows Rep., p. 3). Buffo's reports claim to "correct errors" in Safley's allegedly "unreliable" and "inappropriate" methodology. (*Id*). The alleged "corrections" essentially consist of substituting a <u>generic uniform price</u> for Plaintiffs' male alpacas ($25,728), female alpacas ($22,232), and unborn cria ($7,500) before exposure to the feed (Buffo Depo., Ex. 1, p. 10; Ex. 2, p. 13) in place of Safley's appraisal value of <u>the individual alpacas</u> based on his evaluation of <u>their unique characteristics</u> including, but not limited to, conformation, pedigree and breeding suitability. (Safley Depo., Ex A., Magical Farms App.; Ex. B, Majestic Meadows App.).

Buffo derived these irrelevant generic values by averaging unconfirmed auction results he discovered on the internet, as well as values from the 2003 Breeder's Choice, Celebrity Alpaca Sales, Parade of Champions, and AOBA auctions. (Buffo Depo., Ex. 1, Magical Farms Rep., pp. 12-13; Ex. 2, Majestic Meadows Rep., pp. 13).[2] Buffo then applied a decrement of

---

[2] To the extent that Buffo's Reports rely on the graphical representations of auction results included in Safley's Reports, and seek to comment and/or extrapolate Plaintiffs' damages from them, such emphasis is misplaced. While knowledge of auction results and their averages is part of Safley's knowledge resulting from his years of industry experience, such information is merely one component of Safley's

33% to the generic values, purportedly to determine the reduction in value to Plaintiffs' alpacas as a result of ingesting Defendants' poisonous feed.[3] (*Id*). Buffo's Reports claim these "corrections" demonstrate that damages to Magical Farms and Majestic Meadows would not exceed $4,773,000 and $282,543, respectively, rather than the appraisals of $13,595,859 and $1,288,249, respectively, as determined by Safley. (Buffo Depo., Ex. 1, Magical Farms Rep., p. 3, 9; Ex. 2, Majestic Meadows Rep., p. 3, 9). Buffo, however, makes no statement in the Reports as to the actual amount of Plaintiffs' damages. (Buffo Depo., Ex. 1, Magical Farms Rep., Ex. 2, Majestic Meadows Rep.).

On August 8, 2006, Plaintiffs' counsel deposed Buffo. (Buffo Depo.). During the first half of that deposition, Buffo claimed that he was neither engaged to prepare, nor did he prepare, an appropriate methodology so as to actually calculate Plaintiffs' damages in this case. (Buffo Depo., p. 97). Buffo also stated that he did not determine an appropriate figure for Plaintiffs' damages (Buffo Depo., pp. 97; 100-101) and does not know what the appropriate methodology for calculating Plaintiffs' damages would be. (Buffo Depo., pp. 98, 100). After discussing his testimony with Defendants' counsel over lunch that same day, Buffo returned to the deposition and recanted those assertions, claiming that his "correction" of Safley's methodology does in fact constitute his opinion that Magical Farms' and Majestic Meadows' damages are $4.3 million and $272,543 to $282,542 respectively. (Buffo Depo., pp. 105, 109).

---

knowledge relative to the appraisal of alpacas. Safley has testified that those averages were simply provided to illustrate the general market and did not constitute Safley's "methodology" for determining the value of Plaintiffs' alpacas. (Safley Depo., pp. 232-33)("Those averages were meant to illustrate the marketplace. . . I didn't necessarily use those averages to appraise any particular alpaca.")

[3] Buffo's 33% decrement applies to alpacas that survived the feed incident. Both Buffo and Safley agree that appropriate decrement to be applied to deceased alpacas is 100%.

# ARGUMENT

## I. Standard for Admissibility of Expert Testimony

Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or to otherwise, if **(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.** (Emphasis added).

The trial court is the "gatekeeper" that must screen proffered expertise to ensure that any expert testimony admitted is both relevant and reliable. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589, 113 S. Ct. 2786 (1993). In *Daubert*, the Supreme Court set forth a four factor test to determine whether proffered expert testimony is both reliable, and relevant,[4] under Rule 702. *Id.* at 593-594. Those factors include: (1) whether the theory or methodology has been or can be tested; (2) whether it has been subjected to peer review; (3) whether it has a known or potential rate of error; and (4) whether it has been generally accepted in the scientific community. *Id.*

In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S. Ct. 1167 (1999), the Supreme Court held that the trial court's gatekeeping function under Rule 702 applies equally to non-scientific expert testimony, requiring the "trial judge [to] determine whether the testimony has a reliable basis in the knowledge and experience of the relevant discipline." *Id.* at 147-49. The trial court may consider some or all of the *Daubert* factors in determining the reliability of expert testimony based on knowledge <u>other than scientific knowledge</u>. *Id.* at 149-150. The party

---

[4] Under Rule 401, "relevant evidence" is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

offering the proffered testimony bears the burden of proving the fact of reliability by a preponderance of the evidence. *U.S. v. Pollard*, 128 F. Supp.2d 1104, 1119 (E.D. Tenn. 2001).

A.  **Expert Qualifications**

  1.  **Buffo is not qualified to appraise Plaintiffs' alpacas or to rebut Safley's appraisal of Plaintiffs' alpacas.**

In order for Buffo's testimony to be admissible in this case pursuant to Rule 702, Defendants must demonstrate by a preponderance of the evidence that Buffo is qualified to testify to the opinions set forth in his Reports by virtue of his knowledge, skill, experience, training, or education. Fed. R. Evid. 702. An individual may generally possess specialized knowledge to qualify as a helpful expert on damages under proper circumstances, yet be unqualified to answer specific questions in a particular case. *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994), *cert. denied*, 513 U.S. 1111, 115 S.Ct. 902 (1995); *De Jager Constr., Inc. v. Schleininger*, 938 F. Supp. 446 (W.D. Mich. 1996). Defendants cannot meet their burden because the bulk of Buffo's Reports consists of assertions that only an appraiser with expertise in the alpaca industry is qualified to make.

The scope of Buffo's engagement, as set forth in his Reports, was to "comment on damages, if any" to Plaintiffs and further, to comment on Safley's Reports. (Emphasis added) (Buffo Depo., Ex. 1, p.3; Ex. 2, p. 3). Buffo's Reports go beyond the scope of "commenting" on Plaintiffs' damages and essentially purport to re-appraise Plaintiffs' alpacas. (Buffo Depo., Ex. 1, Magical Farms Rep.; Ex. 2, Majestic Meadows Rep.). Buffo admits, however, that he is unqualified to perform such an appraisal because he has no experience whatsoever in the alpaca industry and admits that he lacks the expertise necessary to determine the fair market value of a particular alpaca. (Buffo Depo., pp. 38-42; 74). To suggest that Buffo can testify as to Plaintiffs'

damages based on average values when he lacks any knowledge of actual values would be bootstrapping of the most outrageous order.

Not only is Buffo completely unfamiliar with how to appraise an alpaca, Buffo is not qualified to appraise personal property of <u>any kind</u>. He is not certified by any organization to appraise assets of any kind, nor is he certified by any organization in the area of business valuation. (Buffo Depo., pp. 25; 17-18; Ex. 1, Magical Farms Rep., p. 31; Ex. 2, Majestic Meadows Rep., p.22). While Buffo states that he is a candidate member in the American Society of Appraisers[5] ("ASA"), candidate members are merely applicants to the ASA, and have no accreditation from the ASA whatsoever. (Ex. 1, ASA Principals of Appraisal Practice and Code of Ethics, ("ASA PAP"), Misuse of Membership Designations 7.8).[6] Clearly, Buffo is not qualified to answer the question of what Plaintiffs' individual alpacas are worth, which is what

---

[5] Buffo asserted his candidate membership in the ASA in his Reports. (Buffo Depo., Ex. 1, Magical Farms Rep., p. 31; Ex. 2, Majestic Meadows Rep., p.22). In his deposition testimony, Buffo stated only that he "belong[s]" to the ASA and that he has completed the certification courses. (Buffo Depo., pp. 17-18). Buffo was asked, but could not confirm whether or not the ASA has any section for livestock of animal husbandry. (*Id.*, pp. 24-25). Buffo was unsure, and stated only that his "specialty area is business valuation." (*Id*).

[6] This Court may take judicial notice of the ASA PAP (and Plaintiffs respectfully move that this Court do so) under Federal Rule of Evidence 201 which provides, in pertinent part

> (b) **Kinds of Facts.** A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonable be questioned.
>
> ...(d) **When Mandatory.** A court shall take judicial notice if requested by a party and supplied with the necessary information.

The ASA PAP are not facts subject to reasonable in dispute in this case as Buffo himself purports to follow them. (Buffo Depo., 27). Furthermore, this Court should take judicial notice of the ASA PAP as Plaintiffs' have supplied the necessary information by attaching a copy to this motion. Federal Courts have recognized the various rules of the American Society of Appraisers, and the duties of appraisers under those rules. *See, e.g., Salt Lake Tribune Publishing Co., LLC v. Management Planning, Inc.*, 2006 WL 3692660 (D. Utah 2006).

{AWF\K0638216.5}                                 8

his Reports purport to do, and therefore, his testimony should be excluded. *See Berry* at 25 F.3d 1342, 1351.

Furthermore, Buffo's Bachelor of Arts degree in economics and his claim of fourteen years of experience in providing services related to damages consultation, expert witness services, economic and market analysis, bankruptcy matters, and related corporate finance services (Buffo Depo., Ex. 1, Magical Farms Rep., 31; Ex.2, Majestic Meadows Rep., 22) are not, in themselves, sufficient qualifications to perform any assessment of Plaintiffs' damages or to rebut Safley's appraisals in this case. *See, e.g., In re Wallace's Bookstores, Inc.*, 316 B.R. 254 (E.D. Ky. 2004) (precluding the testimony of a CPA offered to render an opinion of the debtor corporation's solvency status because her lack of education and experience in bankruptcy insolvency, as evidenced in her expert report, rendered her opinions unreliable); *R.S.E., Inc. v. Pennsy Supply Inc.*, 523 F. Supp. 954 (M.D. Pa. 1981)(finding that a damage-model prepared by a lawyer-economist could not be relied upon in a pre-*Daubert* antitrust case because he was not an expert in road construction or blacktop production); *Cummins v. Lyle Indus.*, 93 F.3d 362, 371 (7th Cir. 1996)(industrial engineer not permitted to render expert opinion regarding the adequacy of warnings, instruction manual and alternative design for a trim press).

### B. Relevance and Reliability

1. **Buffo has no opinion relevant to a determination of Plaintiffs' damages in this case and the assertions in Buffo's Reports are equally irrelevant to this dispute because Buffo fails to tie them to the facts of this case.**

Buffo should be excluded as a witness because his testimony does not "fit" the case, nor is his testimony tied closely enough to the facts to be of use to the trier of fact in resolving the issues in contention. *Daubert*, 509 U. S. at 591-92. Even if this Court were to find that Buffo may possess the general qualifications to assess Plaintiffs' damages, the proffered expert

testimony must also be connected to existing data in this case by more than the *ipse dixit* of Buffo. *See Mohney v. USA Hockey, Inc.*, 138 Fed. Appx. 804, 809 (6th Cir. 2005); *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 424 (5th Cir. 1987); *Lake Michigan Contractors, Inc. v. Manitowoc Co., Inc.*, F. Supp.2d 791, 800 (W.D. Mich. 2002). When there is too great an analytical gap between the data and the opinion offered, the testimony should be excluded. *General Elec., Co. v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512 (1997).

Buffo's Reports are replete with assertions that he fails to link in any way to the facts of this case. For example, Buffo makes the unsupported assertion that a calculation of damages in this case must consider conditions of the alpaca market including "financial returns…so limited on any given alpaca [that] ownership can oftentimes best be justified by the opportunity for realizing tax loss…" (Buffo Depo., Ex. 1, Magical Farms Rep., p. 5; Ex. 2, Majestic Meadows Rep., p. 5). Buffo also claims that alpacas are raised for investment purposes "to take advantage of favorable tax treatment." (Buffo Depo., Ex. 1, Magical Farms Rep., p. 4; Ex. 2, Majestic Meadows Rep., p. 4). Buffo's statements to that effect imply, without support, that Plaintiffs' alpacas have no real investment value beyond tax treatment. (*Id.*) Yet, Buffo's "corrections" to Safley's appraisals fail to incorporate any data that "reflects" the purported tax benefits achieved by Plaintiffs as a result of alpaca ownership.[7] (*Id.*)

Buffo also states that Plaintiffs' damages are a "function of the financial return[s] [Plaintiffs' Alpacas] could have otherwise generated" (*Id.*, Ex. 1, Magical Farms Rep., p.7; Ex. 2, Majestic Meadows Rep., p. 7) and that one must consider "plaintiff's own prior experience and market context in terms of actual sales experience and economic returns achieved when

---

[7] Furthermore, Buffo has absolutely no expert knowledge qualifying him to make any statement on the tax implications of alpaca ownership, as Buffo is not a CPA, has taken only one tax course in college and could not, when asked, elaborate to any degree on the alleged tax advantages of alpaca ownership beyond a vague statement that accelerated depreciation is permitted under Section 179 of the tax code. (Buffo Depo., 110; 114).

evaluating plaintiff's damages."[8] (*Id.*, Ex. 1, Magical Farms Rep., p.8; Ex. 2, Majestic Meadows Rep., p. 8). Contrary to these assertions, Buffo's "corrections" of Safley's appraisals do not account for the historical performance of either Magical Farms or Majestic Meadows, as is evident by the fact that Buffo applied identical values to all Plaintiffs' alpacas, across the board, despite differing levels of historical financial performance and auction sale prices for the two farms. Buffo also opines that "some [farms] are going to find their alpacas more marketable than others" (Buffo Depo., pp.115; 116) yet he never visited Plaintiffs' farms and did nothing to evaluate their marketing programs in order to account for those factors in his "corrections" to Safley's appraisals. (*Id.*, pp. 117-118).

In this case, Buffo chose to base the conclusions in his Reports solely on unsupported facts and assumptions, and failed to investigate any facts likely to reveal that Plaintiffs' alpacas were, in fact, worth more than the generic average values he applied to them. In a not dissimilar case of incompetent analysis proffered under the guise of expertise, *De Jager Construction, Inc., supra*, the Western District of Michigan prohibited a CPA from rendering a damages opinion on behalf of the plaintiffs, where the CPA made unsupported assertions and projections, deliberately ignored documents and figures relevant to the discipline of accounting and "picked and chose" among purported facts to benefit his client's claim. *De Jager*, 938 F. Supp. 446, 449-455. Buffo purports to be an expert in economic analysis and business valuation and therefore, was required to investigate facts necessary to render a competent opinion in those disciplines. As in *De Jager Construction*, Buffo failed to do so, and he should be excluded as a witness.

---

[8] Buffo's assertions implying that Plaintiffs' damages are limited by historical financial performance are also unsupported legal conclusions, which should be excluded at trial. *See, e.g., Woods v. Lecureux*, 110 F.3d 1215, 1219-20 (6th Cir. 1997), *citing Torres v. County of Oakland* (6th Cir. 1997), 758 F.2d 147, 151. The *Torres* Court held that testimony couched as a legal conclusion is not helpful to the jury because it may convey the witness' unexpressed and perhaps erroneous legal standard to the jury.

{AWF\K0638216.5}  11

As Plaintiffs will show at the hearing on this motion, the contradictions in Buffo's Reports and deposition testimony are many. The fundamental conclusion, however, is that Buffo could have either tailored his "corrections" to fit facts and data relevant to Plaintiffs' <u>actual</u> damages in this case, or produced an independent valuation of Plaintiffs' damages to satisfy Rule 702, but he simply failed to do so. The change of heart that Buffo experienced at his deposition, whereby he sought to recant his admission that he had no opinion as to Plaintiffs' actual damages in this case, is simply absurd and casts further doubt on Buffo's credibility. Buffo cannot assert, on the one hand, that Safley's methodology is inappropriate and then purport to use the same methodology to determine his own expert opinion of damages in this case. Pursuant to *Joiner*, Buffo's testimony should be excluded as the analytical gap between the facts and the "opinion" offered is simply too great and cannot assist the jury in determining any issue in this case. *Id.* at 522 U.S. 136, 146

### 2. Buffo's Reports and the assertions therein are unreliable and are not grounded in any methodology whatsoever, scientific or otherwise.

To the extent that Buffo can be said to have employed any methodology whatsoever in preparing his Reports, a layperson, including any member of the jury in this case, could calculate the generic average values that Buffo seeks to pass off as science and expertise. Buffo's "corrections" fail to meet the standard of reliability set forth in *Daubert,* as they employ no tested methodology, have no potential known rate of error, and do not use methods generally accepted in the scientific community. *Id.* 509 U.S. 579, 593-94. Furthermore, Buffo's Reports do not meet the flexible standard for the admissibility of non-scientific expert testimony set forth in *Kumho,* because they have no basis in the knowledge and experience of either the alpaca industry, nor any discipline relevant to damages. *Id.* 526 U.S. 137, 149-150.

Buffo's Reports are also unreliable by both accounting and appraisal industry standards. Although Buffo claims that the Reports comply with the American Institute of Certified Public Accountants ("AICPA") Standards for Consulting Services (Buffo Depo., p. 26)("SSCS," attached as Ex. 2 hereto),[9] which apply to member firms such as Ernst & Young in the preparation of expert reports for use in litigation, the Reports, in fact, violate numerous basic tenets of the SSCS. For example Statement 1.6 of the SSCS requires that members "[u]ndertake only those professional services that the member or the member's firm can reasonably expect to be completed with professional competence." (Ex. 2, SSCS, No. 1.6).

As set forth above, Buffo makes assertions throughout his reports which are not within his area of competence. Buffo is admittedly incompetent to appraise alpacas and could not identify any experience on Ernst & Young's part with regard to appraising alpacas. (Buffo Depo., pp. 38-42; 74). Buffo is admittedly incompetent to give tax advice, and is not a CPA, but opines about the tax implications of alpaca ownership throughout his Reports. (Buffo Depo., pp. 110; 114) He could not identify anyone at Ernst & Young that consulted on or corroborated those assertions. (Buffo Depo., pp. 113-114). Furthermore, the Expert Reports are not well grounded in any of Buffo's purported areas of competence.

Statement 1.6 of the SSCS further requires that members "obtain sufficient relevant data to provide a reasonable basis for conclusions or recommendations" reached whenever a consulting engagement is performed. (Ex. 2, SSCS, No. 1.6). As set forth above, Buffo has failed to obtain and apply relevant data to the purported "correction" of Safley's appraisals in

---

[9] The Standards of the AICPA are not facts subject to reasonable in dispute in this case as Buffo himself purports to follow them. (Buffo Depo., p. 26). Furthermore, this Court should take judicial notice (and Plaintiffs respectfully move the Court to do so) of the AICPA SSCS and the Rules of the AICPA Code of Conduct incorporated therein as Plaintiffs' have supplied the necessary information by attaching a copy to this motion. Fed. R. Evid. 201.

{AWF\K0638216.5} 13

this case. Buffo provides no basis for the 10% auction commission of $1250 that he applied to reduce his average values. (Buffo Depo., Ex. 1, Magical Farms Rep., Ex. 2, Majestic Meadows Rep.) Buffo also arrived at the value for unborn cria, not based on sufficient data, but because it is his "understanding that pregnant females typically sell for between $5,000 and $10,000 more than maiden females." (Buffo Depo., Ex. 1, Magical Farms Rep., p. 13; Ex. 2, Majestic Meadows Rep., p. 13). That "understanding" is based solely on the word of another of Defendants' purported experts, Anthony Stachowski.[10] (Buffo Depo., pp., 178-179).

Buffo's Reports further violate the standards of the ASA, which he purports to follow. (*Id*. at .p. 27). Under ASA PAP, Buffo failed to, among other things, ascertain the appropriate facts bearing on the kinds of value pertinent to the undertaking. (Ex. 1, ASA PAP, 3.1). Buffo admits he has not considered what the appropriate measure of Plaintiff's damages is, yet purports to have an opinion on the amount of Plaintiffs' damages. (Buffo Depo., pp. 97; 101-101).

Further, Buffo failed to perform an "inspection, investigation, and study thorough enough to uncover all the pertinent characteristics" of property in conducting an appraisal. (Ex. 2, ASA PAP, 6.9). Buffo never visited Plaintiffs' farms or inspected Plaintiffs' alpacas, among other omissions, yet purports to appraise their value, in violation of ASA PAP. (Buffo Depo. 117-118).

As set forth above, Buffo's Reports and the assertions therein are unreliable under Rule 702, *Daubert*, and even the professional standards to which he himself purports to adhere.

---

[10] Buffo's understanding of many areas of the alpaca industry is based solely on instruction by Stachowski. (Buffo Depo. 43; 47; 54; 178). To the extent that this Court sees fit to admit any expert testimony by Buffo, he should be precluded from testifying with regard to Stachowski's opinions, as such evidence is inadmissible hearsay. *Mike's Train House, Inc. v. Lionel, LLC*, 472 F.3d 398, 409 (6th Cir. 2006).

## CONCLUSION

As set forth above, and as Plaintiffs will demonstrate at the hearing on this matter, any testimony offered by Buffo in this matter is an attempt by Defendants to mislead the jury with irrelevant and unreliable evidence. Buffo's claim that he has "corrected" Safley's assumptions and methodology is a sham, as is any testimony related thereto. Therefore, Buffo should be precluded from testifying at the trial on this matter.

Respectfully submitted,

/s/ Douglas V. Bartman
Robert J. Valerian (0001533)
Douglas V. Bartman (0073103)
Philip R. Bautista (0073272)
Kahn Kleinman, LPA
1301 East Ninth Street
2600 Tower at Erieview
Cleveland, OH 44114-1824
(216) 696-3311 (Phone)
(216) 623-4912 (Fax)
rjvalerian@kahnkleinman.com
dbartman@kahnkleinman.com
pbautista@kahnkleinman.com
*Attorneys for Plaintiffs, Magical Farms, Inc.
and Majestic Meadows Alpacas, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on February 2, 2007, a copy of the foregoing Motion to Preclude was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Douglas V. Bartman
*One of the Attorneys for Plaintiffs, Magical Farms,
Inc. and Majestic Meadows Alpacas, Inc.*