# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO, EASTERN DIVISION

| | | |
|---|---|---|
| **MAGICAL FARMS, INC., et al.,** | ) | **CASE NO. 1: 03CV2054** |
| | ) | |
| PLAINTIFFS, | ) | **JUDGE CHRISTOPHER BOYKO** |
| | ) | |
| v. | ) | |
| | ) | |
| **LAND O'LAKES, INC., et al.,** | ) | **(ORAL ARGUMENT REQUESTED)** |
| | ) | |
| DEFENDANTS. | ) | |

## DEFENDANTS' MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFFS' EXPERT MICHAEL SAFLEY

NOW COME Defendants, Land O'Lakes, Inc., and Land O'Lakes Farmland Feed, LLC, by and through counsel, and request that this Court issue an Order excluding the testimony of Plaintiffs' expert, Michael Safley, regarding economic damages related to his opinions concerning the diminished value of 278 allegedly affected alpacas.

The basis for this Motion sounds upon the fact that Mr. Safley's testimony and underlying opinions violate the principles of *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993) and Federal Rule Evidence 702 and 703, as the testimony and underlying opinions are unreliable, subjective and speculative. Furthermore, as this Court has recently emphasized the importance of the evidentiary requirement of supporting expert opinions with reliable principles and methodology, it is clear that Mr. Safley's expected testimony and opinions do not and cannot adhere to this prerequisite.

The reasons for this Motion are more fully set forth in the attached Memorandum in Support, which is attached hereto and incorporated by reference herein.

Respectfully submitted,

**Sutter, O'Connell & Farchione Co. L.P.A.**

/s/Jonathan M. Menuez
Thomas H. Terry, III, Esq. (0016340)
Jonathan M. Menuez, Esq. (0064972)
3600 Erieview Tower
1301 East 9th St.
Cleveland, Ohio 44114
216-928-2200
216-928-4400 fax

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFFS' EXPERT, MICHAEL SAFLEY**

**I.     Introduction**

Defendants, Land O'Lakes, Inc., and Land O'Lakes Farmland Feed, LLC, pursuant to Federal Rules of Evidence 702 and 703 and *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993)("*Daubert*"), move to exclude the opinions of Plaintiffs' damages expert, Michael Safley. As shown below, Mr. Safley's opinion estimating a generalized sixty-six (66) percent diminution to the value of each allegedly affected alpaca in this matter is unreliable, subjective and speculative. The law requires exclusion of this conjecture as it is insufficient to bridge the analytical gap and unjustifiably extrapolates to an unfounded conclusion. Furthermore, on December 8, 2006, this Court issued an Order granting, in part, Defendant's Motion for Partial Summary Judgment and Defendants' Motion to Strike. See, *Order*, attached as Exhibit A. The Court specifically struck conclusory statements within the opinion of Plaintiff's expert, Dr. Denise Stoll, on the basis that those portions of the opinion "were silent as to what principles or methods" she used in reaching her conclusions. Applying this same rationale to Mr. Safley's conclusions, the suspect methodology associated with his opinions creates an expert evidentiary void that should serve to eliminate his opinions from trial.

**II.    Brief Statement of Pertinent Facts**

This action stems from an incident that occurred in March, 2003, when Plaintiffs' alpacas ingested feed manufactured by Defendant that inadvertently contained salinomycin. As a result

3

of consuming the contaminated feed, Plaintiffs allege their alpacas were either damaged or killed. On October 8, 2003, Plaintiffs filed their Complaint in United States District Court, Northern District of Ohio, Eastern Division. In their Complaint, Plaintiffs claim to have suffered economic losses from the allegedly non-conforming feed manufactured and sold by Defendants. Defendants timely filed their Answers, which denied the allegations within the Amended Complaint.

Pursuant to the Court's Order, Plaintiffs produced expert reports. Among the identified experts was Mr. Michael Safley, an alpaca owner and breeder. See, *Safley Report*, attached as Exhibit B. On April 25, 2005, Mr. Safley issued a report that included an appraisal of three hundred eighty-five live and deceased alpacas owned by Plaintiff Magical Farms. The report included his opinions as to Plaintiffs' loss of value to each alpaca that allegedly ingested the feed. Mr. Safley's report indicated his appraisal of these alpacas before eating the feed as $17,313,750.00 and $3,776,552.00 after eating the feed. In total, Mr. Safley estimated a total loss of value of $13,537,198.00.

The amount of diminution in value for Plaintiff Magical Farms' alpacas was broken down in the within appraisal produced on April 25, 2005. All deceased animals were given zero value after eating the feed. The value of each of the remaining two hundred thirty three (233) allegedly affected animals was reduced by sixty-six (66) percent. For example, Huacaya male alpaca Cisco Kid owned by Magical Farms was valued at $5,000.00 prior to March 1, 2003, and $1,666.00 after eating the feed. Likewise, a randomly unrelated Suri female alpaca Rosetta was

4

valued at $50,000.00 prior to eating the allegedly contaminated feed and $16,665.00 after March 1, 2003. Further, Plaintiffs' Huacaya male herdsire Blockbuster, with "quality and pedigree to be used as a stud," was valued at $200,000.00 prior to eating the feed and reduced in value by sixty-six percent to $66,660.00 after eating the feed. The same exact calculation was globally applied to the remaining affected animals owned by both Plaintiffs regardless of age, sex or ability to provide breeding services.

Similarly, on June 14, 2005, Mr. Safley produced a report which included the appraisal of thirty-nine live alpacas and three deceased alpacas owned by Plaintiff Majestic Meadows, who allegedly ate the contaminated feed. The report also calculated a loss of business income "as a result of the feed incident" totaling $229,230.00. Mr. Safley estimated a loss of value in the animals of $1,059,019.00, which represented an $188,231.00 diminution in value from the appraised value of $1,247,250.00 for all animals on March 1, 2003.

On April 12, 2006, Defendants conducted the deposition of Mr. Safley. His testimony demonstrated his calculations regarding economic loss were nothing more than subjective opinions reducing the value of all of Plaintiffs' alpaca by two thirds. According to Mr. Safely, he came up with his "own opinion," and that "opinion is that the alpacas were worth a third of what they were before eating the feed." See, *Depo. of Safley*, p. 165, l. 11-14. The deposition ultimately confirmed Mr. Safley's opinions are not supported by any principle or method. As a result, Mr. Safley's opinions are not admissible at trial. Defendants are, therefore, entitled to an

5

Order from this Court excluding his testimony regarding economic damages related to any diminished value of allegedly affected alpacas at trial.

### III.  This Court Is The "Gatekeeper" And Must Exclude Unreliable Expert Testimony

The key issue on this Motion is whether the proposed testimony by Plaintiffs' expert, Mr. Safley, regarding the diminution of value is sufficiently reliable to justify its admission under *Daubert*, 509 U.S. at 589-95. Federal Rule of Evidence 702 imposes a "gatekeeping" responsibility on Federal Trial Courts, requiring judges to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable," which should be the "primary focus" of the inquiry. *First Tennessee Bank National Association v. Barretto*, 268 F.3d 319, 334 (6th Cir. 2001)(quoting *United States v. Thomas*, 74 F.3d 676, 681 (6th Cir. 1996); *Kuhmo Tire Co. v. Carmichael* (1999), 526 U.S. 137, 147-148; See, *Daubert*, 509 U.S. at 589; *Vargas v. Lee*, 317 F.3d 498, 500 (5th Cir. 2003). (FRE 702 assigns to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand). Accordingly, the trial judge is generally required to "ensure that any and all scientific testimony or evidence is not only relevant, but reliable." *Daubert*, 509 U.S. at 589, 592-93.

The District Court's gatekeeping role is to separate expert opinion evidence based on "good grounds" from subjective speculation that masquerades as scientific knowledge. Factors to be considered include: (1) whether the expert's theory "can (and has been) tested"; (2) the "known or potential rate of error;" (3) whether the theory "has been subjected to peer review and publication;" and (4) whether the theory enjoys "general acceptance" within the "relevant scientific community." *Daubert*, 509 U.S. at 593-594; see also, *Vargas*, 317 F.3d at 500; *Black v. Food Lion, Inc.*, 171 F.3d 308, 311 (5th Cir. 1999).

In addition, courts must "be mindful of other applicable rules," including Federal Rules of Evidence 703 and 403. *Daubert, 509* U.S. at *595*. Under Federal Rule of Evidence 703, expert opinions may be based on hearsay only if the "facts or data" relied upon are of a type "reasonably relied upon by experts in the particular field in forming opinions or inferences on the subject." Federal Rule of Evidence 403 allows a court to exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *Black v. Food Lion, Inc.*, 171 F.3d 308, 311 (5th Cir. 1999)

The Advisory Committee Notes accompanying Rule 702 also recognize a number of other factors relevant to determining whether expert testimony is sufficiently reliable to be admissible. See, *Fed. R. Civ. P. 702*, Advisory Notes. Such factors include (1) whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion (noting that in some cases a trial court "may conclude that there is simply too great an analytical gap between the data and opinion proffered"); (2) whether the expert has adequately accounted for obvious alternative explanations; and (3) whether the expert "is being as careful as he would be in his regular professional work outside his paid litigation consulting." *Id.*

The factors announced in *Daubert* are not exclusive, and the standard under Rule 702 is flexible. For example, if the expert does not conduct his or her own research, some of the *Daubert* factors may not "fit." However, even with respect to any such derivative analysis, the District Court must still determine whether there is any "objective, verifiable evidence that the testimony is based on 'scientifically valid principles.'" *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, at 1316 n. 4, 1317-18 (9th Cir. 1995)("Daubert II"). Thus, "[n]ot every guidepost outlined in Daubert will necessarily apply to expert testimony ... but the district court's 'preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid ...' is no less important." *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 990-91 (5th Cir. 1997), citing Daubert, 509 U.S. at 592-93.

The Supreme Court has noted that the four *Daubert* factors for determining scientific reliability need not be applied in all cases. *Kuhmo Tire*, supra, at 152. The trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable. *Id.* The trial judge must have discretionary authority both to avoid unnecessary 'reliability' proceedings in ordinary cases where the reliability of an expert's method is properly taken for granted, and to require appropriate proceedings in less usual or more complex cases where cause for questioning the expert's reliability arises. *Id.*

Application of the *Daubert* rule to the facts of this case is straightforward. Plaintiffs have the burden to establish the admissibility of Mr. Safley's testimony "by a preponderance of proof." *Daubert*, 509 U.S. at 593; Fed. R. Evid. 104. Plaintiffs must present sufficient expert evidence based on admissible and reliable scientific studies or methodology to be allowed to express expert opinions on the threshold question of whether Plaintiffs have suffered damages. *Id.*

8

Expert testimony is subject to scrutiny because it "can be both powerful and quite misleading" to jurors. *Daubert,* 509 U.S. at 595. As commentators have recognized, courts must rigorously exclude unreliable scientific testimony - otherwise the "ultimate victims" will be "America's workers and consumers through the increased costs, diminished opportunities, and foregone product availabilities imposed on enterprises engaged in scientific research and development and product manufacturing."[8] The opinions that Plaintiffs' expert, Mr. Safley, seeks to present to the jury are misleading since they are premised upon wholly unreliable and unscientific evidence. This Court, as the gatekeeper, must exclude these kind of opinions pursuant to *Daubert* and its progeny.

### IV. The Plaintiffs' Expert Opinions Regarding Diminution of the Value of Affected Alpacas Are Not Reliable And Merely The Result Of Subjective Computation And Speculation

Mr. Safley's reports attempt to assess the alleged diminution in alpaca value loss allegedly resulting from salinomycin toxicity. In his appraisal of Plaintiff Magical Farms' three hundred and eighty-five live and deceased alpacas that allegedly ate contaminated feed, Mr. Safley opined the following economic damages resulted from death and/or injury of alpacas from alleged salinomycin toxicity:

1. <u>Value of Deceased Alpacas 1-74</u> – value of all deceased alpacas, including male, female, in utero cria males, and in utero cria females was $1,769,000 prior to eating the feed. After March 1, 2003, the value of all of these deceased alpacas was $0.00, which represents a total loss in the value of each alpacas value.

---

[8] Thombrugh, *Junk Science -The Lawyer's Ethical Responsibility,* 25 FordhamUrb. L. J., 449-450(1998)(D*26); see also,* Bernstein, *The Breast Implant Fiasco,* 87 Cal. L. Rev. 457, 459 (1999)(D-5.)(nationwide, the breast implant plaintiffs "never presented any sound scientific evidence that implants cause systemic diseases," yet the lawsuits led to "the bankruptcy of one of the largest corporations in the United States and a nationwide wave of litigation that is yet to subside.").

9

2. <u>Value of Herdsire Males 75-152</u> – The value of deceased herdsire males (75-106), alpacas of sufficient quality and pedigree to be used as a stud, prior to eating the feed was appraised at $4,295,000, while the value after ingestion was appraised at $0.00. The value of the affected herdsire males (107-152) was $6,235,000 on March 1, 2003. After ingesting the feed, these alpacas were valued at approximately $2,058,000, which represents a diminution of roughly sixty-six percent in value.

3. <u>Value of Affected Animals 153-385</u> – The value of affected alpacas, including male, female, male cria, in utero cria males, in utero cria females and animals with shared ownership was $5,014,750 prior to eating the allegedly contaminated feed. After March 1, 2003, the appraised value of all these animals was $3,316,324, which also represents a diminution of roughly sixty-six percent in value.

See, *Safley Report,* attached as Exhibit B.

Overall, Mr. Safley's reported appraisal value for the affected alpacas are merely the result of subjective and untested computations. Plaintiff Magical Farms offers no evidence of economic damages, and the facts offered by Majestic Meadows do not support the Safley conclusion. There is nothing within the content of his appraisal that demonstrates the global dimunition of sixty-six percent for all of the affected alpacas is empirically supported or reliable. Perhaps this is due to Mr. Safley's own admissions at his discovery deposition that there are other values to these alpacas, but "I came up with own opinion. And my opinion is that they were worth a third of what they were before eating the feed." See, *Depo. of Safley*, p. 165, l. 11-14.

**A. Mr. Safley's Appraised Diminution of Value is Scientifically Unreliable.**

Mr. Safley performed an appraisal of Plaintiffs dead and allegedly affected alpacas before the animals ate the feed and after the animals ate the feed. *Id.* at p. 196, l. 2-4. Mr. Safley's <u>Value of Affected Animals 153-385</u> appraisal opinions suggest Plaintiff Magical Farms

allegedly affected non-breeding quality alpacas had a value of $5,014,750 before eating the feed, and value of $3,316,324 after eating the feed. His Value of Herdsire Males 75-152 appraisal includes an opinion that the value of the affected herdsire males (107-152) was $6,235,000 before eating the feed, and a value of approximately $2,054,000 after eating the feed. As demonstrated by closer, individual examination of each appraised allegedly affected alpaca, **Mr. Safley merely reduced the value of these animals before eating the feed by two-thirds to reach his appraisal of their individual value after eating the feed.**

Mr. Safley stated in his April 12, 2006, discovery deposition that in order to reach this appraised diminution of value he relied upon (1) market perception, *Id.* at p. 161-163; (2) his experience in pricing animals with unrelated "flaws," such as heart murmurs, *Id.*; (3) the allegation that the animals ate the feed, *Id.*; and (4) unrelated sales of unrelated alpacas who allegedly ate the feed on unrelated farms. *Id.* at p. 166-167. After completing these things, Mr. Safley came up with the opinion that all of the alpacas were worth one-third of their value the day after allegedly eating the feed. *Id.* at p. 163, l. 13-17.

The foundation of Mr. Safley's appraisal opinions Value of Affected Animals 153-385 and Value of Herdsire Males 75-152(107-152) is so completely lacking in scientifically valid principles and methodology that all of his appraisal opinions related to these 278 allegedly affected alpaca must be excluded. There is no reliability gained from Mr. Safley's limited "market perception research" of these animals:

> Q.  Okay.
>
> A.  It would be my opinion the marketplace in general considers it (the fact that they ingested the feed) a flaw.
>
> Q.  And thus the reduction in value of two-thirds?

11

> A. Right. I came up with my opinion, for instance, I asked, just to test it, to get some other ideas about it, I asked Tim Vincent at Celebrity Sales, "If you had 200 or 300 of those alpacas to sell and you're going to have an auction and you disclosed to all the people that came to the auction they had ingested the food, how much do you think they would sell for?" He said, "I think you would be lucky to get ten cents on the dollar." That was his opinion. I came up with my own opinion. And my opinion is that they were worth a third of what they were before eating the feed.

See, *Depo. of Safley,* at p. 164-165.

This form of conversational market research, and any individual quantifying response, does not account for the sex of the alpaca, whether it is indeed alive or in utero, or whether it is capable of still being offered for male or female reproductive services. Essentially, Mr. Safley's opinions only account for the anecdotal affect of salinomycin upon an alpaca's value. Perhaps this is why Mr. Safley opines that the value of a herdsire male is diminished at the same percent as an *in utero* alpaca. This type of assessment is economically invalid without consideration of the qualities of each alpaca and its specific worth. This does not satisfy the scientific reliability required by *Daubert* as there is too great an analytical gap between the data and opinion proffered. At the very least, this examination of Mr. Safley's "methodology" demonstrates his non-compliance with the previous rationale of this Court striking other expert opinions.

However, Mr. Safley's appraisal of the 278 allegedly affected alpacas should not be excluded solely upon his unscientific research and methodology. His reliance upon "forced sales" equally calls for exclusion of his opinions. These alleged forced sales occurred on an unrelated farm with unrelated animals. The affected animals owned by Plaintiff Magical Farms, however, have not and will not be available for sale. See, *Depo. Libby Forstner*, p. 244, 245. Thus, to opine that these allegedly affected animals command a lesser market value of two-thirds their original value is merely unscientific guesswork.

12

Finally, Mr. Safley accounts for no evidence that all of these allegedly affected alpacas actually ingested the feed and that the feed accounted for his perceived "flaw." In fact, his appraisal was not even based upon actual damage to the individual alpacas. See, *Depo. of Safley,* at 184-185. Mr. Safley was not concerned with the medical evidence even though it impacted his opinion of market perception. See, *Id.* at 166, 177. In the vacuum of Mr. Safley's appraisal, the mere possibility of ingestion is enough to create a flaw. See, *Id.* at 162. It is this particular medically unsupported and unrelated "flaw" that leads to an across the board reduction of the value of 278 alpaca to one-third the amount prior to allegedly eating the feed. This is yet another demonstration of why Mr. Safley's appraisal is the type of improper, unscientific, and unreliable opinion that *Daubert* and its progeny of case law seeks to exclude from trial.

**B. Mr. Safley's Appraisal Cannot Be Objectively Verified.**

The <u>Value of Affected Animals 153-385</u> and <u>Value of Herdsire Males 75-152</u> (107-152) appraisal values of affected alpaca are not objectively verifiable. Mr. Safley admits that he has less confidence in his appraisals of unsold alpacas. *Id.* at p. 138. Based upon this admission, he cannot possibly have any confidence in his appraisals submitted in this matter because none of the underlying alpacas have ever been sold. Each and every allegedly affected alpaca owned by Magical Farms was pulled off the market after March 1, 2003. According to Gerald Forstner III, the allegedly affected animals are "unfit for sale" since eating the feed. See, *Depo. of Gerald Forstner III*, p. 159, l. 11-14. Plaintiff has not placed any of the 278 allegedly affected alpacas in an auction for sale. See, *Depo. of Gerald Forstner, Jr.*, p. 215, l. 8-10 Plaintiff has not advertised any of the 278 allegedly affected alpacas as available for sale. *Id.* at p. 215, l. 10-25. Plaintiff has not even discussed selling these animals. *Id.* at p. 216, l. 15-17. In short, Plaintiff has not sold or attempted to sell, nor is Plaintiff even willing to sell, any of the allegedly affected

13

animals involved in this lawsuit. See, generally, *Id.*; See, also, *Depo. of Libby Forstner*, p. 197, l. 24-25. Plaintiff is simply unwilling to sell any allegedly affected alpacas when not even they can guarantee "the total extent of the damage." See, *Depo. of Libby Forstner*, p. 198, l. 13-21. Without any objective, verifiable evidence of value at sale, it is far too speculative to allow Mr. Safley to then offer his appraisal opinions. This is exactly the type of testimony *Daubert* seeks to prohibit.

The effect of this complete lack of marketing and sale on Mr. Safley's appraisal of the allegedly affected alpaca is two-fold. First, he was completely unable to consider any objective, verifiable evidence specifically related to the price at sale of these alpacas. Without this information there is no basis for a valid conclusion. Second, since there are no sales demonstrating "market perception," Mr. Safley's appraisal opinions were not, cannot, and will not ever be tested. Finally, Mr. Safley failed to take into consideration the economic benefit derived by the owners from the continued cria production (breeding), stud fee earnings and fiber production of the allegedly affected animals. Thus, the appraisal of the 278 allegedly affected alpacas is entirely subjective, predicated on unproven and unprovable assumptions that are not reproducible or reliably linked to Plaintiffs' economic loss.

**V.     Conclusion**

Plaintiffs' expert Mr. Safley's opinions regarding the appraised value of the 278 alpacas allegedly affected from the ingestion of contaminated feed are not appropriately reliable to establish expert damages evidence in this matter. His opinions completely lack any objective supporting data, and instead rely on his own subjective beliefs. Further, his opinions are not testable. Other courts have rejected attempts to lower Rule 702's evidentiary bar by allowing opinions replete of any link between analysis and opinion. Overall, Mr. Safley's appraisal of the

278 allegedly affected alpacas and the anticipated correlating trial testimony fail to meet the established principles of *Daubert* and Federal Rules of Evidence 702 and 703.

WHEREFORE, consistent with those principles, and for all of the reasons set forth above, Defendants Land O'Lakes, Inc. and Land O'Lakes Farmland Feed, LLC respectfully urge this Honorable Court to grant its Motion, and to exclude the testimony Michael Safley regarding economic damages related to diminished value of 278 allegedly affected alpacas.

                    Respectfully submitted,

                    **Sutter, O'Connell & Farchione Co. L.P.A.**

                    /s/Jonathan M. Menuez
                    Thomas H. Terry, III, Esq. (0016340)
                    Jonathan M. Menuez, Esq.  (0064972)
                    3600 Erieview Tower, 1301 East 9th St.
                    Cleveland, Ohio 44114
                    216-928-2200
                    216-928-4400 fax

## **CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing has been filed electronically this 2nd day of February, 2007.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/Jonathan M. Menuez
Jonathan M. Menuez, Esq. (0064972)
Thomas H. Terry, III (0016340)