UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **MAGICAL FARMS, INC., et al.,** | : | **CASE NO. 1:03-CV-2054** |
| | : | |
| Plaintiffs, | : | **JUDGE CHRISTOPHER BOYKO** |
| | : | |
| v. | : | |
| | : | **TRIAL BRIEF OF DEFENDANTS** |
| **LAND O'LAKES, INC., et al.,** | : | **LAND O'LAKES, INC. AND LAND** |
| | : | **O'LAKES FARMLAND FEED, LLC.** |
| Defendants. | : | |

## I. STATEMENT OF FACTS

Defendant Land O'Lakes, Inc. is a cooperative and the parent company of Defendant Land O'Lakes Farmland Feed. Plaintiff Magical Farms, Inc. (MFI) is an Ohio corporation engaged in the business of breeding and sale of alpacas. Plaintiff Majestic Meadows Alpacas, LLC, (MMA) is an Ohio limited liability corporation engaged in the breeding and sale of alpacas.

This case arose out of the introduction of salinomycin, an antibiotic, in a batch of alpaca feed, lot #3FEB28MAS, produced at the Massillon, Ohio, mill operated by Land O'Lakes Farmland Feed, LLC, (LOFF) on February 28, 2003. This batch was then distributed to various outlets and some of the feed was purchased by Plaintiff. Beginning about March 17, 2003, Plaintiff MFI began experiencing the deaths of alpacas which had been fed the feed containing salinomycin. These deaths continued for approximately two weeks.

The Defendants have admitted negligence regarding the presence of salinomycin in batch #3FEB28MAS. The Defendants have also admitted liability in the deaths of 73 animals, all owned by MFI. Plaintiff MMA has failed to produce any evidence to a reasonable degree of

veterinary certainty tying the death of any animal to ingestion of feed from #3FEB28MAS. The Defendants deny culpability in the deaths of other animals and injury to the surviving animals.

## II. CONTROLLING LAW

The Plaintiffs have advanced theories of negligence, negligence per se, products liability and strict liability. It is submitted by the Defendants that the Admission of Negligence renders any particular theory moot and that the issues remaining before this Court are:

1. Is there a proximate causal relationship between the ingestion of salinomycin and the deaths of animals other than those for which Defendants have admitted liability? In conjunction with this issue is the appropriate standard of expert testimony.

2. What was the recoverable value of each of the dead animals at the time of their deaths?

3. Did the ingestion of salinomycin cause tangible physical injury to the surviving animals?

5. Did the surviving animals with a tangible physical injury suffer a loss of recoverable value as a result of that injury?

### A. PROXIMATE CAUSE

Proximate cause is defined in syllabus 1 of *Piqua v. Morris* (1918), 98 Ohio St. 42, as: "The proximate cause of a result is that which in a natural and continued sequence contributes to produce the result, without which it would not have happened."

### B. STANDARD OF EXPERT OPINION EVIDENCE

To establish that salinomycin was the proximate cause of death of certain alpacas the Plaintiffs must offer medical/veterinary testimony expressed as a probability. *Becker v. Lake County Memorial Hospital, West* (1990), 53 Ohio St.3d 202, 207. See also, Opinion and Order (ECF #255) filed December 8, 2006 at pp. 5-6. The same standard of expert testimony must be met by Plaintiffs in proving the existence of tangible injuries to any of the surviving animals.

The Defendants anticipate that an attempt to establish a proximate causal connection between the ingestion of salinomycin and death for the animals not subject to the Admission, and/or to prove tangible injuries on the part of survivors will justify a Rule 50 motion at the close of the Plaintiffs' evidence. Specifically, there is currently no admissible expert testimony which goes any further than a "possible" connection, and in the case of the survivors no tangible injuries have been identified. (ECF #255).

C. DAMAGES

Throughout this litigation Plaintiffs have sought to collect the retail market value[1] for all of the dead animals. The Plaintiffs have further asserted a damage theory referred to as the "tainted herd" theory. The tainted herd theory starts with the proposition that the mere ingestion of salinomycin contaminated feed caused injury to animals in the herd and they are all therefore tainted and have a reduced value. The lost value is expressed as an across the board 66% reduction in market value and constitutes the single largest claim in the case. This loss is explained as a reduced value in the market place because of the "market perception" of damage irrespective of the ability of Plaintiffs to prove that any specific animal suffered a tangible injury proximately caused by the ingestion of feed containing salinomycin. Plaintiffs' theory of "market perception" is put forth absent the support of market studies or expert studies.

The damage arguments of Plaintiffs seem simple, but they are in fact deceptively complex.

---

[1] The market value as defined by Plaintiffs is the dollar value Michael Safley has placed on a particular animal.

### 1. THE RETAIL MARKET VALUE IS NOT THE PROPER MEASURE OF DAMAGES FOR THE DEAD ALPACA

First, the Defendants challenge the valuations placed on the dead alpacas. Plaintiff has valued them at retail auction prices without taking into account the costs associated with such sales. Further, the Plaintiffs have built into the number an unrealized gain as part of the value.

The question of the proper valuation of personal property which has been destroyed was addressed by the court in *Arko Plastics v. Drake Industries* (1996), 115 Ohio App.3d 221. That court was faced with a claim concerning the total loss of a quantity of goods in the manufacturing process. The lower court had awarded damages based on the retail value of the finished product. In sustaining the defendant's assignment of error regarding this measure of damages the court held that the plaintiff was not entitled to unrealized profit involved in the final retail sale, but only the cost of replacement goods or the wholesale value of the goods. See, *The Limited Stores, Inc. v. Pan American World Airways, Inc.* (1992), 65 Ohio St.3d 68.

The *Arko* court in reaching its conclusions relied on two decisions *Millison v. Ades of Lexington, Inc.* (1971) 262 Md. 319 and *Whaley v. Crurtchfield* (1956), 226 Ark. 921 which had relied on 1 Sedgwick on Damages (9 Ed. 1912) 500-501, Section 248a, which states:

> Where in the ordinary case a value is to be found for a single thing, the value is what the single thing would sell for; which amounts to the retail value of it. But when a court is dealing with a stock of goods held for sale, or even with a portion of such stock, the value to be found is its value as a stock or a part of a stock of goods, that is, its wholesale value, without the profit of resale which enters into the retail value; for at the time of valuation that profit has not been earned, or, to put the matter in another way, the process of distribution, which brings the goods into the hands of the consumer and thus gives them their final increment in value, has not yet taken place.

The Defendants submit that the animals here have to be treated as stock for sale; otherwise the retail price values assigned to them by Plaintiffs makes no sense. If the animals were not going

4

to put to sale they would have a book value only.² The Plaintiffs cannot claim the retail value under Ohio law and must establish the wholesale value of the animals.³

## 2. THE THRESHOLD ISSUE FOR ANY CLAIM OF LOST VALUE OF SURVIVING ALPACA IS THE EXISTENCE OF TANGIBLE INJURY

In *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.* (1989), 42 Ohio St.3d 40, 43, the Court recognized that a defective product has the potential to cause several types of compensable injury including:

> Generally speaking a defective product can cause three types of injury: personal injury, property damage, and economic loss. "Personal injury" is, of course, self-explanatory. "Property damage" generally connotes either damage to the defective product itself or damage to other property. "Economic loss" is described as either direct or indirect. "Direct" economic loss includes the loss attributable to the decreased value of the product itself. Generally, this type of damages encompasses "the difference between the actual value of the defective product and the value it would have had had it not been defective." It may also be described as "the loss of the benefit of the bargain * * *." "Indirect" economic loss includes the consequential losses sustained by the purchaser of the defective product, which may include the value of production time lost and the resulting lost profits. (Internal citations omitted.)

The Plaintiffs have asserted a claim for property damage. The property damage claim is itself bifurcated into claimed damages based on the fatal injury sustained by some alpacas and a claimed damage sustained by the living animals alleged to have ingested feed containing salinomycin. The Plaintiffs cannot prove property damage claims for the live animals due to a lack of evidence of any tangible physical injury to the animals. Specifically, the reports of Denise Stoll, DVM, Plaintiffs' expert witness, speculated as to some undefined injury to the animals based on the assumption that the animals had ingested feed containing salinomycin. The

---

² Book value is reported to the IRS on an annual basis as part of the tax returns. The 2002 return for MFI has been produced.
³ Defendants suggest the average of "herd sales" would be a reasonable basis for determining the wholesale value of this livestock.

5

Plaintiffs have not provided an expert who has offered an opinion to the requisite degree of medical or veterinary certainty that any of the live animals have sustained a specific injury. *See* Opinion and Order of December 8, 2006 at 5-7. (ECF # 255.)

For the same reason the claimed loss of 2/3's of market value, an indirect economic loss, must also fail.

The Ohio Supreme Court refined the definition of recoverable indirect economic damages in *Queen City Terminals v. Gen. Am. Transp. Corp.* (1995), 73 Ohio St.3d 609. In *Queen City* both plaintiffs had suffered indirect economic damages as defined in *Chemtrol*, supra. The damages there related to damage to real property owned by only one of the plaintiffs. The non-owning plaintiff asserted claims for indirect economic loss occasioned by its loss of ability to use the damaged real property. The Court disallowed the damage award of the unharmed plaintiff stating:

> Thus, the mere coupling of personal injury or property damages with indirect economic damages is not enough to entitle a plaintiff to recover the indirect economic damages. The plaintiff must show that the indirect economic damages arose from the property damage or personal injury. **There must be a direct causal nexus between the <u>tangible</u> damage and the indirect economic losses in order for the losses to be recoverable**. Id. at 615. (Emphasis added.)

When applied to the facts in this case the *Queen City* holding precludes recovery for the claimed loss of market value of animals which allegedly ingested feed containing salinomycin. The claimed loss is not related to a tangible injury.

At page 7 of the Order issued on December 8, 2006, (ECF # 255) the Court held:

> If the damages claimed go to the disability of the animal and any subsequent damages arising therefrom, plaintiffs must offer legally sufficient evidence. If the damages alleged are the loss of value of personal property, then evidence of fair market value is appropriate and admissible. Id. at 7.

6

Defendants contend that the Plaintiffs, to establish a recoverable loss of value of personal property, must prove a tangible injury with legally sufficient proof. This tangible injury must be the direct and proximate cause of the loss of fair market value. Dr. Stoll has uniformly failed to identify any specific tangible injury to any of the surviving animals. Plaintiffs have employed no additional experts to fill that void.

For the reasons argued above the surviving animals must also be valued at the wholesale and not the retail fair market value.

### 3. RULE 50 ISSUES

The Defendants anticipate that the Plaintiffs will be unable to meet their burden in establishing by a preponderance of the evidence the proper value for the dead animals. The Defendants anticipate that the Plaintiffs lack sufficient evidence to cross the threshold requirement of tangible injuries to the surviving animals that will allow them to proceed to damages. In either event Defendants believe that a Rule 50 Motion will be well taken.

### D. WITNESSES

The Defendants anticipate calling:

Anthony Stachowski, DVM. Dr. Stachowski will testify to the value of those dead animals where the Plaintiffs provided him with a basis for making an assessment. Per his report Dr. Stachowski will also testify as to veterinary opinions concerning the overall health and physical status of the animals he was permitted to assess and examine as well as their market value on the date of examination.

Steven Buffo will testify concerning the report and results of Mr. Safely as well as the actual economic loss of MMA, should they be allowed to proceed with that claim.

7

**E.     EXHIBITS**

In the event Defendants present a case in chief in this matter it is anticipated that the following documents will be introduced:

- Tax information provided by Plaintiffs ;
- All veterinary/expert reports and working papers relied upon by all experts in this matter (the actual reports of the experts would only be offered for purposes of the record and not for the purpose of being submitted to the jury);
- All sales contracts;
- All farm event records;
- All medical records and necropsies;
- All breeding records.

As the Court is aware, discovery of documents in this matter has been extensive and controversial. To date, document production exceeds 150,000 pages of material. Additionally, there remain outstanding issues that may substantially affect the number of documents introduced by the parties.

Accordingly, at the present time the parties are attempting to work together to define the universe of documents that may be utilized at the time of trial. To this end, Defendants have suggested the use of composite exhibits, each covering a range of documents in a logical classification. This would allow identification by the properly named joint exhibit (number or letter) as well as the corresponding bates number, or other identifier.

Although this approach may vary slightly from the Court's Trial Order regarding pre-marking of exhibits, it is anticipated that such an approach will have an overall affect of judicial economy at the time of trial. Accordingly, based upon the current status of Plaintiffs' claims, it

is impossible for Defendants to state, with any greater Specificity potential exhibits that may be utilized during Plaintiffs' case in chief.   However, based upon the above, Defendants anticipate the parties will be supplementing their Pretrial Disclosures on the issue of exhibits by the end of the week.  Below is a listing of Pretrial Exhibit Identification of documents that may be used at trial.

- A. All correspondence created by Libby Forstner (Bates Nos. LF 00001-00463)
- B. All documentation produced by Defendants (Bates Nos. LOL 000001-002216; LOLMF 000001-001603; LOFMF 0001604-0002151)
- C. All documents produced by Plaintiffs regarding "farm event records" (Bates Nos. MF021277-152757)
- D. All documents produced by Dr. Denise Stoll (Bates Nos. DS00001-03160)
- E. All documents produced by the Ohio State University (Bates Nos. OSU00001-01108; OSU/GOL00001-00107)
- F. All documents produced by Equine Insurance Claims Service, Inc. (Bates Nos. EIC00001-00075)
- G. All documents produced by Wilkins Livestock Insurers (Bates Nos. WL00001-00007)
- H. All documents provided by Crawford and Company (Bates Nos. CC00001-CC01416)
- I. All documents provided by Prairie States Insurance Agency, Inc. (Bates Nos. PSIA00001-00008)
- J. All documents provided by Wellington Veterinary Clinic, Inc. (Bates Nos. WVC00001-00002)
- K. All documents produced from Yokom McColl Testing Laboratories, Inc. (Bates Nos. YM00001-00020)
- L. All documents provided from the Ohio Alpaca Breeder's Association (Bates Nos. OABA00001-00229)
- M. All documents provided from Alpaca Registry, Inc. (Bates Nos. ARI000001-000005)
- N. All documents provided by C. Norman Evans, DVM (Bates Nos. NE00001-00032)

9

O. All documents provided by International Llama Registry (Bates Nos. ILR000001-000521)

P. All documents provided by Century Sales (Bates Nos. CS00001-00024)

Q. All documents provided from Llama Life II (Bates Nos. LL00001-00096)

R. All documents provided by Western Reserve Alpaca Farm (Bates Nos. WR00001-00024)

S. All documents provided by Dr. Richard Houston (Bates Nos. RH0001-0033)

T. All documents provided by Dr. Sheila Grimes (Bates Nos. SG00001-00035)

U. All farm event records produced by Plaintiffs including, but not limited to, MF021277-MF143275

V. All documentation provided to and/or relied upon by all experts in this matter in support of their opinions

W. All veterinary/medical records produced by Plaintiffs

X. All tax records produced by Plaintiffs

Y. All financial records produced by Plaintiffs

Z. All documents reflecting ownership produced by Plaintiffs

AA. All purchase records produced by Plaintiffs

BB. All sales records produced by Plaintiffs

CC. All necropsy reports and/or post mortem examination documentation concerning deceased animals

DD. All ARI documentation produced in this matter

EE. All spreadsheets relating to deceased and affected alpacas and/or claimed damages produced in this matter

FF. All spreadsheets relating to Plaintiffs' damages previously produced

GG. All documents identified as exhibits in the depositions which have been filed with the clerk's office

HH. All breeding records produced by Plaintiffs

II. All discovery responses of the parties in this matter

G. **ANTICIPATED EVIDENTIARY ISSUES**

The Defendants anticipate that the primary evidentiary issues will revolve about the question of value of both dead and surviving animals. These issues have been explored above.

The Defendants anticipate, in light of the Rule 26 pretrial disclosures of Plaintiffs, that there will be substantive disputes involving expert opinions from laymen and previously undisclosed expert opinions from laymen.

The Defendants also anticipate that there will be substantive disputes concerning the scope of cross examination of the defense expert witnesses. During the deposition of one of the defense experts, Anthony Stachowski, DVM, the Plaintiffs spent very little time on the substance or basis of his opinions, instead exploring a settlement in an unrelated case, his marital status and other extraneous material.

F. **LENGTH OF TRIAL**

The Defendants anticipate the trial may last two weeks.

Respectfully submitted,

**Sutter, O'Connell & Farchione, Co., LPA**

/s/Jonathan M. Menuez
Jonathan M. Menuez, Esq.  (0064972)
Thomas H. Terry, III, Esq. (0016340)
Sutter, O'Connell & Farchione Co., L.P.A.
3600 Erieview Tower
1301 East 9th St.
Cleveland, Ohio 44114
Phone:  216-928-2200
Fax:  216-928-4400

12

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing has been filed electronically this 26th day of February, 2007. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/Jonathan M. Menuez
Jonathan M. Menuez, Esq. (0064972)
Thomas H. Terry, III, Esq. (0016340)